IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

KENTAIA WILLIAMS,
Plaintiff,

v.

BRAN HOSPITALITY
MANAGEMENT, LLC,

BRAN HOSPITALITY
VALDOSTA, LLC,

BRAN HOSPITALITY PERRY,
LLC,

AMBRYO HOSPITALITY
MANAGEMENT, LLC

And

ALBA RAMIREZ, personally,

Defendants.

CIVIL ACTION NO.
JURY TRIAL DEMANDED

## COMPLAINT

COMES NOW Plaintiff, Kentaia Williams ("Plaintiff" or "Ms. Williams"),

by and through counsel, signed below and files this Complaint, against her former

employer(s) Bran Hospitality Management, LLC, Ambryo Hospitality

Management, LLC (Administratively Dissolved), Bran Hospitality Perry, LLC,

Bran Hosptality Valdosta, LLC and Alba Ramirez in her personal capacity

("Defendant Bran") ("Defendant Ambryo") ("Defendant Perry") ("Defendant

Valdosta") ("Defendant Ramirez") together ("Defendants"), alleging as follows:

## NATURE OF THIS ACTION

1.

Plaintiff seeks to recover damages from Defendants resulting from her

termination because of Retaliation for her protected activity, for Title VII

discrimination in race, sex and retaliation and race discrimination against all

possible Defendants and retaliation under Section 1981 against all Defendants

when Plaintiff attempted to exercise her rights under Title VII, 42 § 2000e *et.*

*seq.* ("Title VII")  and Section 1981, 42 U.S.C. § 1981 ("1981").

## ADMINISTRATIVE PREREQUISITES

2.

Plaintiff timely filed a charge of race and sex and retaliation with the Equal

Employment Opportunity Commission ("EEOC") (charge # 410-2025-11519).

3.

Plaintiff received a right-to-sue from the EEOC with respect to Charge No.

410-2025-11519 on or about July 24, 2025.

2

4.

After termination, Plaintiff filed a second charge in Retaliation with the EEOC on September 24, 2025 (charge # 415-2025-02583)

5.

Once the Right-To-Sue letter is issued by the EEOC, Plaintiff will amend this Complaint.

6.

Both charges served to provide notice of the charge to Defendants and Defendants were afforded the opportunity but chose not to participate in the investigation and conciliation of this charge. This action was filed within ninety days of Plaintiff's receipt of the first "Notice of Right-to-Sue." Thus, administrative remedies have been satisfied.

## PARTIES, JURISDICTION, AND VENUE

7.

This Court's jurisdiction, over Plaintiff's claims, is invoked under 28 U.S.C. §1331 and §1337.

8.

Venue properly lies in the Middle District of Georgia under 28 U.S.C.

§1391(b) because a substantial portion of the events giving rise to the claims

herein arose in this judicial circuit.

9.

Plaintiff is a black, female, natural person and resident of the state of Georgia

who submits herself to the jurisdiction and venue of this Court.

10.

Defendants have substantial ties to the state of Georgia and the Middle

District of Georgia given that they operate businesses (hotels) located in Georgia

and maintain and maintained offices at all relevant times hereto, conducting

regular, not isolated acts of business in Georgia and in the Middle District of

Georgia. Therefore, this Court possesses jurisdiction over these Defendants.

11.

The unlawful employment practices were committed within the state of

Georgia. Each Defendant maintains the same registered agent in Houston County,

Georgia located in this district and division. Therefore, venue is proper in this

district and division pursuant to 28 U.S.C. §1391 (b) & (d).

12.

All company Defendants (hotel) may be served with the summons and complaint to the same registered agent identified on the website for the Secretary of State, Shrad K. Amrit at 732 Main Street, Perry, Georgia 31069.

13.

Defendant Ramirez works as the General Manager for Defendants' hotel and was the immediate supervisor of Plaintiff. Defendant Ramirez made decisions concerning the employment, compensation and schedule of Plaintiff, and Defendant Ramirez terminated Plaintiff's employment with Defendants. Defendant Ramirez may be served with summons and complaint at her place of work located at 1209 N. Augustine Road, Valdosta, Georgia 31601.

**Plaintiff's Employment**

14.

Plaintiff worked for Defendant in multiple capacities. Plaintiff was one of the first employees hired when Defendants opened the hotel. Plaintiff initially manned the front desk. Defendants, recognizing Plaintiff's work ethic and ability to perform, promoted Plaintiff to Assistant General Manager. Among her other duties, Plaintiff was tasked with oversight of Housekeeping staff and their work.

15.

Plaintiff worked only on the weekend as she was fully committed elsewhere during the week. Defendants knew this schedule limitation.

16.

Plaintiff made complaints to Human Resources regarding the discrimination she was suffering on or about June 16, 2025. HR never followed up with Plaintiff about her report, a protected activity. Defendants' Employee handbook does not include a provision against discrimination.

17.

As far as Plaintiff is aware, no internal investigation of her complaints ensued until after Plaintiff filed a charge of discrimination with the EEOC.

18.

After Plaintiff filed her charge with the EEOC, Defendants called Plaintiff to ask questions.

19.

By the time Defendants made that phone call, Plaintiff had already received her right-to-sue letter from the EEOC. Plaintiff's attorney responded to Defendants' phone call to Plaintiff on or about August 13, 2025 with a letter to Defendants outlining Plaintiff's complaints.

20.

Defendants responded to Plaintiff's reports of discrimination by first disabling her access to Defendants' electronic system where she would be informed through groups chats, important updates, schedules and pay updates, then isolating Plaintiff by instructing employees not to contact her. Then, on or about June 30, 2025, Defendants responded to Plaintiff's reports of discrimination by demoting her, an adverse action.[1] (Within weeks of Plaintiff's reports of discrimination) Defendants subsequently terminated Plaintiff's employment on September 20, 2025, also an adverse action.[2]

21.

Plaintiff was never disciplined by Defendants. Although Defendants' employee handbook outlines a progressive discipline policy, the policy was not used to discipline Plaintiff. However, on September 20, 2025,[3] Plaintiff was terminated, on behalf of all Defendants by Defendant Ramirez. The formal letter of termination was not received by Plaintiff until on or about October 7, 2025. Defendants' termination of Plaintiff was just **two months** after Plaintiff received

---

[1] Which would dissuade a reasonable worker from asserting his/her rights.
[2] Which would also dissuade a reasonable worker from asserting his/her rights and would interfere with his/her ability to assert his/her rights.
[3] Courts have found a causal connection where the reporting of discrimination and adverse employment action are close in time.

her right-to-sue letter and just **one month** after Defendants received the letter outlining the discrimination suffered by Plaintiff written by her attorney. Plaintiff's attorney, within the letter, asserted Plaintiff's right to be free from discrimination and retaliation and suggested a resolution to the matter. While the termination letter asserts multiple reasons for termination, (most of which were pretextual) Defendants specifically claimed that a reason for Plaintiff's termination was for "making false claims and demanding money through a third party." This was likely a reference to the letter sent to Defendants by Plaintiff's attorney and shows by Defendants' own words that Defendants' termination of Plaintiff was due to Plaintiff's exercise of her rights to be free from discrimination and retaliation.

22.

After the termination, Plaintiff filed another charge in Title VII Retaliation.

23.

The second charge of Retaliation was filed because at the time that Plaintiff filed her first charge of Discrimination and Retaliation, Defendants had not yet terminated her employment. By filing the second charge in Retaliation, Defendants were afforded a second opportunity to investigate and conciliate the charge but so far have failed to do so.

## COUNT I-TITLE VII RACE AND GENDER/SEX DISCRIMINATION
### (Against Company Defendants)

24.

Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs of this Complaint as if set forth fully in this count.

25.

Defendant Companies' discriminatory treatment against Ms. Williams was done in part because of Plaintiff's sex/gender and race. Defendant Companies' actions were a violation of 42 U.S.C. § 2000e *et. seq.*

26.

Defendant Companies' actions were willful, wanton, and intentionally directed to harm Plaintiff in violation of her federally protected rights.

27.

Defendant Companies' conduct was willful and deliberate, Plaintiff is entitled to all relief afforded under the statute, including the award of punitive damages against Defendant Companies in an amount to be determined in the enlightened conscience of the jury.

28.

As a result of Defendant Companies' unlawful conduct, Plaintiff has
suffered mental and emotional distress in an amount to be determined at trial by
the enlightened conscience of an impartial jury. Plaintiff has also suffered lost
wages and the benefits of employment, which she seeks to recover from
Defendant Companies.

## COUNT II-TITLE VII RETALIATION RACE AND GENDER/SEX
### (Against Company Defendants)

29.

Plaintiff re-alleges and incorporates by reference each of the foregoing
paragraphs of this Complaint as if set forth fully in this count.

30.

Plaintiff reported her opposition to sex/gender discrimination and race
discrimination to Human Resources on or about June 16, 2025.

31.

Plaintiff complained to Human Resources about Defendant Alba's disparate
treatment of her. Alba preferred Hispanic male workers over black females.
Plaintiff complained that Edgar Ramirez, a Hispanic male with much less
education, training, or on-the-job success, was, according to information and

belief, paid more than Plaintiff. Edgar was also treated more favorably than

Plaintiff as Defendant failed to disciplined him for his last-minute failures to

report to work and his failure to support coverage for absent co-workers. and

instead promoted him to sales duties. This while Defendants undermined

Plaintiff's success and authority by isolating her from information necessary to

perform her job, preventing Plaintiff from attending important meetings or giving

any input and eventually terminating Plaintiff's access to the company email

system.

32.

Despite her higher-ranking position and greater responsibilities, Selvin

Discuas, a Hispanic male maintenance worker was paid more than Plaintiff.

Plaintiff requested but received no increase in pay.

33.

Plaintiffs' male co-workers are treated with more respect, and they are given

more autonomy while Plaintiff was micro-managed, disrespected, and held to an

unfairly high standard. Plaintiff was expected to perform multiple roles, and

answer to demands without question while maintaining a consistently strong

performance of her job tasks.

34.

When Plaintiff reported a Hispanic worker, Rocio Rodriguez, for incorrectly

marking rooms as clean and for stealing items in the rooms, Alba ignored the

reports and Rocio was permitted to continue working for Defendants. Eventually,

Rocio quit her job but was later re-hired.

35.

As a result of Plaintiff's complaints, Defendant Companies retaliated

against Plaintiff, within weeks of her reports, by excluding her from meetings and

emails that as Assistant General Manager, Plaintiff had always been a part. She

was locked out of Defendants' computer system preventing her from doing her

job. And she was taken off the schedule without prior warning, without discussion

and without any explanation.

36.

Defendant Companies further retaliated against Plaintiff on or about

September 20, 2025 when it terminated her without explanation and without a

previous discipline or opportunity to improve on Defendant Companies' perceived

deficiencies of her, if any.

37.

Defendant Companies' retaliation against Plaintiff violated 42 U.S.C. §2000-e, *et. seq.*

38.

But for Plaintiff's complaint of race and sex/gender discrimination, Plaintiff would not have been excluded from meetings and other important information like emails.

39.

But for Plaintiff's complaint of race and sex/gender discrimination, Plaintiff would not have been removed from Defendants' work schedule.

40.

But for Plaintiff's complaint of race and sex/gender discrimination, Plaintiff would not have been locked out of Defendants' computer system, preventing her from doing her job.

41.

Plaintiff's reports of sex and race discrimination were protected activity under Title VII and the retaliation she suffered as a result violated Title VII.

42.

Defendant Companies' termination of Plaintiff was retaliation for protected activity under the opposition clause of Title VII's anti-retaliation provisions and violated Plaintiff's right to engage in protected activity.

43.

As Defendant Companies' conduct was willful and deliberate, Plaintiff is entitled to all relief afforded under the statute, including an award of punitive damages.

44.

As a direct result of Defendant Companies' unlawful conduct, Plaintiff has suffered lost wages, mental and emotional damages, humiliation, damage to her reputation, the deprivation of her rights under federal law, and is entitled to compensatory and punitive damages.

45.

As a consequence of Defendant Companies' unlawful conduct, Plaintiff suffered lost wages and other benefits of employment.

**COUNT III-RACE DISCRIMINATION-42 U.S.C. SECTION 1981**
**(All Defendants)**

46.

Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs of this Complaint as if set forth fully in this count.

47.

Plaintiff was discriminated against because of her race, African American, in violation of 42 U.S.C. §1981.

48.

Plaintiff's supervisor, Defendant Ramirez, who is Hispanic, treated Ms. Williams differently than Plaintiff's Hispanic co-workers. This was noticed by others and some staff mentioned this to Plaintiff. This disparate treatment was ratified by Company Defendants as Defendant Ramirez was continually employed despite Plaintiff's reports of discrimination.

49.

As above, Hispanics were treated better than non-Hispanics. Infractions by Hispanics were overlooked and despite having less training, education and responsibilities, some Hispanics were paid more than Plaintiff.

50.

As stated *supra*, Defendants also subjected Plaintiff to race discrimination on her terms and conditions of employment.

15

51.

All of these actions constituted race discrimination in violation of 42 U.S.C.
§1981.

52.

As Defendants' conduct was willful and deliberate, Plaintiff is entitled to all
relief afforded under the statute, including an award of punitive damages.

## COUNT IV
## RETALIATION-42 U.S.C. SECTION 1981
## (All Defendants)

53.

Plaintiff re-alleges and incorporates by reference each of the foregoing
paragraphs of this Complaint as if set forth fully in this count.

54.

Defendants retaliated against Ms. Williams in violation of the anti-retaliation
provisions of 42 U.S.C. §1981.

55.

**Retaliation #1**

Within just 2 weeks after Plaintiff complained of race discrimination by her
supervisor, Alba Ramirez, by first complaining to management then by filing a

charge with the EEOC, Defendants demoted Plaintiff without explanation and then attempted to coerce her into signing a document which would have reduced her pay. This was despite Defendants' Anti-Retaliation policy outlined in the Employee Handbook.

**Retaliation #2 (Termination)**

56.

Within just **two months** of receiving her right-to-sue letter and within **one month** of Defendants' receipt of a letter from Plaintiff's counsel, Defendants terminated Plaintiff without explanation. Defendants attempted to justify the termination with pretextual reasons listed in Defendants' termination letter which did not arrive to Plaintiff until on or about October 7, 2025. Although, Defendants listed as one reason for Plaintiff's termination because Plaintiff "making false claims and demanding money through a third party."

57.

Plaintiff's termination occurred as a direct result of her opposition to the

discrimination she suffered based on race in violation of the provisions against

retaliation in 42 U.S.C. §1981. But for Plaintiff's act of complaining about

discrimination she suffered based on race, she would not have been demoted or

terminated.

58.

Defendants' actions in demoting then terminating Ms. Williams following

her complaints of race discrimination were committed with reckless disregard for

her right to be free from discriminatory treatment on account of her opposition to

discriminatory practices and in violation of the Civil Rights Act of 1866, 42 U.S.C.

§ 1981.

59.

As a result of Defendants' unlawful conduct, Plaintiff has suffered mental

and emotional distress in an amount to be determined at trial by the enlightened

conscience of an impartial jury. Plaintiff has also suffered lost wages and the

benefits of employment, which she seeks to recover from Defendants.

## Prayer for Relief

WHEREFORE, Plaintiff respectfully prays that Defendants be summoned to

appear and answer herein, for orders as follows:

a) Take jurisdiction of this matter;

b) Clerk to issue summons as attached;

c) Grant a trial by jury as to all matters properly triable to a jury;

d) Permanently enjoin Defendants from future discriminatory acts relative to discrimination based on race and gender/sex;

e) Enter a judgment that Defendant companies' conduct violated Title VII;

f) Issue a declaratory judgment that Defendants violated 42 U.S.C. § 1981;

g) Judgment in favor of Plaintiff and against Defendants on all counts;

h) Award of damages for future lost wages and benefits of employment;

i) Equitable restitution and relief sufficient to cover lost employment benefits due to Defendants' wrongful termination of Plaintiff's employment;

j) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment, injury to professional standing, injury to character or reputation, injury to credit standing, loss of health, and any other non-pecuniary losses incurred due to the discriminatory conduct;

k) Punitive damages;

l) Award nominal damages if found to be appropriate;

m) Award Plaintiff reinstatement or front wages in lieu thereof;

n) Judgment in favor of Plaintiffs, against Defendants for reasonable attorney's fees and costs of litigation as authorized by 42 U.S.C.§§ 1988 and 2000e; and §1981; and

o) Award such other, further and different relief as this Court deems appropriate and proper for Plaintiff and against Defendants.

Respectfully submitted, this 10th day of October 2025.

/s/Beverly A. Lucas
Beverly A. Lucas
Georgia Bar No.: 427692

LUCAS & LEON, LLC
Post Office Box 752
Clarkesville, Georgia 30523
beverly@lucasandleon.com
706-754-2001 (0)
706-754-8085 (F)

*Attorney for Plaintiff*